UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KEVIN LEE SNYDER,

    Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

    Defendant.
_____/

Hon. Jane M. Beckering

Case No. 1:24-cv-20

**REPORT AND RECOMMENDATION**

    This is an action pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), to review a final decision of the Commissioner of Social Security denying Plaintiff's claim for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) under Titles II and XVI of the Social Security Act.

    Section 405(g) limits the Court to a review of the administrative record and provides that, if the Commissioner's decision is supported by substantial evidence, it shall be conclusive. The Commissioner has found that Plaintiff is not disabled within the meaning of the Act. Plaintiff seeks review of the Commissioner's decision, arguing that it is not supported by substantial evidence.

    Pursuant to 28 U.S.C. § 636(b)(1)(B), authorizing United States Magistrate Judges to submit proposed findings of fact and recommendations for disposition of social security appeals, I recommend that the Commissioner's decision be **affirmed**.

**STANDARD OF REVIEW**

    The Court's jurisdiction is confined to a review of the Commissioner's decision and of the record made in the administrative hearing process. *See Willbanks v. Sec'y of Health and Human Servs.*, 847 F.2d 301, 303 (6th Cir. 1988). The scope of judicial review in a social security case is

limited to determining whether the Commissioner applied the proper legal standards and whether there exists in the record substantial evidence supporting the decision. *See Brainard v. Sec'y of Health and Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989). The Court may not conduct a de novo review of the case, resolve evidentiary conflicts, or decide questions of credibility. *See Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). Fact finding is the Commissioner's province, and those findings are conclusive provided substantial evidence supports them. *See* 42 U.S.C. § 405(g).

Substantial evidence is more than a scintilla but less than a preponderance. *See Cohen v. Sec'y of Dept. of Health & Human Servs.*, 964 F.2d 524, 528 (6th Cir. 1992). It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993). In applying this standard, a court must consider the evidence as a whole, while accounting for any evidence that fairly detracts from its weight. *See Richardson v. Sec'y of Health & Human Servs.*, 735 F.2d 962, 963 (6th Cir. 1984). The substantial evidence standard contemplates a zone within which the decision maker can properly rule either way without judicial interference. *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986). This standard affords the administrative decision maker considerable latitude and precludes reversal simply because the evidence would have supported a contrary decision. *See Bogle*, 998 F.2d at 347; *Mullen*, 800 F.2d at 545.

## **PROCEDURAL POSTURE**

Plaintiff filed an application for DIB on October 7, 2020, and an application for SSI on October 13, 2020, alleging in both applications that he became disabled as of March 23, 2020, due to psoriatic and degenerative arthritis, chronic back pain, herniated and bulging discs, spinal stenosis, history of four elbow surgeries, very limited mobility of arms, history of knee surgeries, history of anal fissures, neuropathy, depression, severe muscle cramps, and shaking spells.

(PageID.84, 102, 295–301, 304–10.) Plaintiff was 44 years old on his alleged onset date. (PageID.83.) He had earned a GED and attended college for a short time and had past work as a Numerical Control Machine Operator, a Furniture Sales Person, a Furniture Delivery Person, and a Car Detailer. (PageID.45, 329–30, 1119.) Plaintiff's application was denied initially and on reconsideration, and he requested a hearing before an Administrative Law Judge (ALJ).

On January 30, 2023, ALJ Robert J. Tjapkes held a hearing and received testimony from Plaintiff and impartial vocational expert (VE) Michelle Ross. (PageID.54–81.) On February 15, 2023, ALJ Tjapkes issued a written decision finding that Plaintiff was not disabled from his alleged onset date through the date of decision. (PageID.36–47.) The Appeals Council denied Plaintiff's request for review on November 17, 2023. (PageID.20–22.)  ALJ Tjapkes's ruling thus became the Commissioner's final decision. *See Cook v. Comm'r of Soc. Sec.*, 480 F.3d 432,434 (6th Cir. 2007). Plaintiff timely initiated this civil action for judicial review on January 8, 2024.

## ANALYSIS OF THE ALJ'S DECISION

The social security regulations articulate a five-step sequential process for evaluating disability. *See* 20 C.F.R. §§ 404.1520(a-f), 416.920(a-f).[1] If the Commissioner can make a

---

[1] 1. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. §§ 404.1520(b), 416.920(b));

2. An individual who does not have a "severe impairment" will not be found "disabled" (20 C.F.R. §§ 404.1520(c), 416.920(c));

3. If an individual is not working and is suffering from a severe impairment which meets the duration requirement and which "meets or equals" a listed impairment in Appendix 1 of Subpart P of Regulations No. 4, a finding of "disabled" will be made without consideration of vocational factors (20 C.F.R. §§ 404.1520(d), 416.920(d));

4. If an individual is capable of performing her past relevant work, a finding of "not disabled" must be made (20 C.F.R. §§ 404.1520(e), 416.920(e));

dispositive finding at any point in the review, no further finding is required. *See* 20 C.F.R. §§ 404.1520(a), 416.920(a). The regulations also provide that, if a claimant suffers from a nonexertional impairment as well as an exertional impairment, both are considered in determining residual functional capacity. *See* 20 C.F.R. §§ 404.1545, 416.945.

The burden of establishing the right to benefits rests squarely on Plaintiff's shoulders, and he can satisfy his burden by demonstrating that his impairments are so severe that he is unable to perform his previous work, and cannot, considering his age, education, and work experience, perform any other substantial gainful employment existing in significant numbers in the national economy. *See* 42 U.S.C. § 423(d)(2)(A); *Cohen*, 964 F.2d at 528. While the burden of proof shifts to the Commissioner at step five of the sequential evaluation process, Plaintiff bears the burden of proof through step four of the procedure, the point at which his residual functional capacity (RFC) is determined. *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997) (ALJ determines RFC at step four, at which point claimant bears the burden of proof).

After determining that Plaintiff met the insured status requirements of the Act through September 30, 2027, and had not engaged in substantial gainful activity since his alleged onset date of March 23, 2020, the ALJ found that Plaintiff suffered from severe impairments of right shoulder degenerative joint disease; right knee degenerative joint disease; lumbar degenerative disc disease; and rheumatoid arthritis. (PageID.38–39.) The ALJ found that Plaintiff's left knee degenerative joint disease, left elbow degenerative joint disease, GERD, reactive airway disease,

---

5. If an individual's impairment is so severe as to preclude the performance of past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if other work can be performed (20 C.F.R. §§ 404.1520(f), 416.920(f)).

obesity, anxiety, and depression were non-severe impairments. (PageID.39.) In evaluating whether Plaintiff's mental impairments were severe, the ALJ considered the "paragraph B" criteria that address four broad areas of mental functioning. *See* 20 C.F.R., Part 404, Subpart P, Appendix 1. The ALJ found that Plaintiff had no limitation in the area of understanding, remembering, or applying information and was mildly limited in the areas of interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing oneself. (PageID.39–40.) At step three, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled any impairment identified in the Listing of Impairments detailed in 20 C.F.R., Part 404, Subpart P, Appendix 1. (PageID.40.)

The ALJ then found that Plaintiff retained the RFC to perform light work, as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b), except:

> no climbing of ladders, ropes, or scaffolds; no more than occasional overhead reaching with the right (dominant) upper extremity, as well as no more than occasional crouching, crawling, kneeling, stooping, climbing of ramps and stairs, and work around hazards such as unprotected heights or unguarded, moving machinery; no more than frequent balancing; and no exposure to extremes of cold.

(PageID.41.)

At step four, the ALJ determined that Plaintiff was unable to perform his past relevant work (PageID.45), at which point the burden of proof shifted to the Commissioner to establish by substantial evidence that a significant number of jobs exist in the national economy that Plaintiff could perform. *See Richardson*, 735 F.2d at 964. Based on testimony from the VE, the ALJ found that an individual of Plaintiff's age, education, work experience, and RFC could perform the jobs of Light Assembler, Folder, and Inspector, approximately 394,000 of which existed in the national economy. (PageID.46–47.) This represents a significant number of jobs. *See, e.g., Taskila v. Comm'r of Soc. Sec.*, 819 F.3d 902, 905 (6th Cir. 2016) ("[s]ix thousand jobs in the United States

5

fits comfortably within what this court and others have deemed 'significant'"). Therefore, the ALJ concluded that Plaintiff was not disabled.

## DISCUSSION

Plaintiff raises two issues in his appeal: (1) the ALJ's mental RFC determination is unsupported by substantial evidence as he failed to properly evaluate the opinion evidence; and (2) the ALJ's determination is unsupported by substantial evidence as he failed to properly evaluate Plaintiff's subjective testimony. (ECF No. 9 at PageID.2153.)

**I.     ALJ's Evaluation of Opinions of Psychological Consultative Examiners**

The ALJ evaluated the medical opinions pursuant to 20 C.F.R. §§ 404.1520c and 416.920c. Under that regulation, the ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s)," even an opinion from a treating source. 20 C.F.R. §§ 404.1520c(a) and 416.920c(a). Instead, an ALJ will articulate his or her determination of the persuasiveness of a medical opinion "in a single analysis using the factors listed in paragraphs (c)(1) through (c)(5) of this section, as appropriate." 20 C.F.R. §§ 404.1520c(b)(1) and 416.920c(b)(1). Those factors include: (1) supportability; (2) consistency; (3) relationship with the claimant; (4) specialization; and (5) other factors which tend to support or contradict the opinion. 20 C.F.R. §§ 404.1520c(c)(1)–(5) and 416.920c(c)(1)–(5). In general, the ALJ must explain his or her consideration of the supportability and consistency factors, but is not required to explain how the remaining factors were considered. 20 C.F.R. §§ 404.l520c(b)(2) and (3) and 416.920c(b)(2) and (3). The regulations explain "supportability" and "consistency" as follows:

> (1) Supportability. The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be.

6

> (2) Consistency. The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be.

20 C.F.R. §§ 404.1520c(c)(1)–(2) and 416.920c(c)(1)–2.

The ALJ is to conduct this analysis with regard to all medical source opinions and prior administrative findings but is not required to give controlling weight to an opinion from any particular source. The former rule, well-known as "the treating physician rule[,] no longer applies." *See Takacs v. Kijakazi*, No. 1:20-cv-02120, 2022 WL 447700, at *9 (N.D. Ohio Jan. 26, 2022), *report and recommendation adopted*, 2022 WL 445767 (N.D. Ohio Feb. 14, 2022). "'Although the new standards are less stringent in their requirements for the treatment of medical opinions, they still require that the ALJ provide a coherent explanation of [his] reasoning.'" *Sadger v. Comm'r of Soc. Sec.*, No. 2:20-cv-11900, 2021 WL 4784271, at *13 (E.D. Mich. Aug. 23, 2021), *report and recommendation adopted*, 2021 WL 4316852 (E.D. Mich. Sept. 23, 2021) (quoting *White v. Comm'r of Soc. Sec.*, No. 1:20-CV-588, 2021 WL 858662, at *21 (N.D. Ohio Mar. 8, 2021)).

On June 15, 2022, consultative examiner Allison Bush, MS, LLP, conducted a psychiatric/psychological examination of Plaintiff. Ms. Bush issued her report, which Dennis L. Mulder, Ed. D, signed, on June 17, 2022. (PageID.1070–73.) The ALJ summarized and evaluated this opinion as follows:

> On June 15, 2022, the psychological consultative examiner opined that the claimant would have marked limitation in his ability to adapt to changes and sustain focus in the workplace. The claimant was able to understand and retain simple to multi-step instructions but follow through would depend on the physical nature of the tasks (19F/5). I find this opinion less persuasive. The history given to the examiner does not mention the claimant's part time work. Moreover, the medical evidence does not support any severe mental impairment. There is no treatment. Finally, the claimant reported engaging in physical activities such as a kayaking and hunting. Therefore, this opinion is less persuasive.

(PageID.45.)

Plaintiff contends that the ALJ erred in evaluating the opinion for three reasons. First, Plaintiff contends that the ALJ erroneously stated that Plaintiff did not mention his part-time work in the history he provided to Ms. Bush, when her report shows that he did mention this job. (ECF No. 9 at PageID.2166–67.) Plaintiff thus asserts that the ALJ "mischaracterized" the record. Next, Plaintiff contends that the ALJ failed to articulate his consideration of the supportability factor. (*Id.* at PageID.2167–68.) Finally, Plaintiff contends that the ALJ's consistency analysis is based on a selective reading of the record because the ALJ failed to mention GAD-7 (Generalized Anxiety Disorder scale-7) findings by his primary care physician indicating that, at certain times, his anxiety was severe. (*Id.* at PageID.2168–69.)

Defendant concedes that "the ALJ mistakenly stated that the consultative examiners were not aware of Plaintiff's continued part-time work" (ECF No. 10 at PageID.2179), but contends that the ALJ cited other grounds that supported his persuasiveness finding. (ECF No. 10 at PageID.2179.) Next, Defendant contends that the ALJ addressed the supportability of the opinion earlier in the decision when discussing the paragraph B factors. (*Id.*) Finally, Defendant contends that the ALJ properly articulated his consideration of the consistency factor by noting that Plaintiff was not receiving treatment from a mental health professional, and Plaintiff reported engaging in physical activities such as hunting and kayaking. Defendant asserts that Plaintiff's contention regarding this factor is simply a request to reweigh the evidence. (*Id.* at PageID.2179–80.)

Beginning with the ALJ's asserted "mischaracterization" or "mistake," in spite of the parties' positions, it is clear from a review of the decision as a whole that the ALJ's observation that Plaintiff did not mention his part-time work to the consultative examiner was accurate. In his discussion of Plaintiff's subjective symptoms, the ALJ noted that Plaintiff "continues to work part

8

time at a strenuous job." (PageID.44.) On the prior page reviewing the medical evidence, the ALJ discussed a September 8, 2022 treatment note summarizing a follow-up visit with John Cambell, M.D., who performed back surgery on Plaintiff the previous September. During the visit, Plaintiff reported that he "continues to work for a company that manufactures long [sic] cabin type homes," and that "[s]ome of the work he does continues to be *rather strenuous*." (PageID.43, 1189–90 (italics added).) Because Plaintiff's job with the log cabin manufacturer is the only part-time job Plaintiff described as strenuous, the ALJ's reference to a strenuous job obviously referred to this job. Although Plaintiff did mention his one-day-a-week job helping with the computer at the rent-to-own store to Ms. Bush (PageID.1118), the ALJ correctly observed that he did not mention his "rather strenuous" job at the log cabin company to her during the June 15, 2022 evaluation. Moreover, Plaintiff did not mention this job at all during his testimony at the administrative hearing when the ALJ questioned him about his employment history, and he points to no evidence that he actually stopped doing this job on the advice of his doctor or for other reasons. (PageID.63–67.) Thus, the ALJ did not mischaracterize the record.

Next, the ALJ properly conducted a supportability analysis as required by the regulation. "[S]upportability relates to the extent to which a medical source has articulated support for the medical source's own opinion, while consistency relates to the relationship between a medical source's opinion and other evidence within the record." *Cook v. Comm'r of Soc. Sec.*, No. 6:20-cv-1197, 2021 WL 1565832, at *3 (M.D. Fla. Apr. 6, 2021), *report and recommendation adopted*, 2021 WL 1565162 (M.D. Fla. Apr. 21, 2021); *see* 20 C.F.R. §§ 404.1520c(1)–(2), 416.920c(1)–(2); *Conklin v. Kijakazi*, No. 21-CV-8486, 2023 WL 104829, at *12–13 (S.D.N.Y. Jan. 5, 2023) (stating that "supportability" "has to do with the fit between the medical opinion offered by the source and the underlying evidence and explanations 'presented' by that source to support her

opinion," and "[c]onsistency is an all-encompassing inquiry focused on how well a medical source is supported, or not supported, by the entire record, not just what a medical source had available to them" (internal quotation marks omitted)). In particular, the ALJ noted that Plaintiff reported to Ms. Bush that he engaged in physical activities such as kayaking and hunting, which the ALJ found did not support the opined mental limitations.[2] (PageID.45, 1119.) While Plaintiff points to other evidence in Ms. Bush's report that may have supported a different conclusion, this is not a basis to reverse the Commissioner's decision if the ALJ's decision is supported by substantial evidence. *See McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006) ("The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion. . . . This is so because there is a 'zone of choice' within which the Commissioner can act without the fear of court interference.") (citation omitted); *Moss v. Comm'r of Soc. Sec.*, No. 1:20-cv-243, 2021 WL 2282694, at *6 (W.D. Mich. June 4, 2021) (noting that "an ALJ's decision is not subject to reversal, even though there may be substantial evidence in the record that would have supported the opposite conclusion, if substantial evidence also supports the conclusion that was reached by the ALJ") (citation omitted).

Similarly, the ALJ also properly articulated his consistency findings. Although the ALJ phrased this finding in terms of supportability, he found Ms. Bush's opined limitations inconsistent with the medical evidence, which demonstrated the absence of treatment by a mental health professional. (PageID.40, 45, 69.) Plaintiff points to other evidence he contends supported the opined mental limitations and argues that the ALJ relied on a selective reading of the record, or cherry-picked the evidence, to support his conclusion. As the Sixth Circuit has observed,

---

[2] Plaintiff also concedes that the ALJ's observation about Ms. Bush being unaware of Plaintiff's part-time job with the log cabin manufacturer, which was an accurate observation, concerned the supportability factor. (ECF No. 11 at PageID.2188.)

arguments that the ALJ "cherry picked the record are frequently made, but seldom successful, because "the same process can be described more neutrally as weighing the evidence." *White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 284 (6th Cir. 2009). Moreover, there is no indication that the ALJ ignored the GAD-7 findings Plaintiff cites. In fact, the ALJ stated he considered "the entire record" (PageID.41), and expressly cited Dr. Polanic's June 16, 2021 treatment note that Plaintiff cites stating that Plaintiff's general anxiety disorder was "uncontrolled" and his Lexapro would be increased to 20 mg daily. (PageID.42 (citing PageID.540–42.) Although an ALJ is required to consider all of the evidence in the record, "[a]n ALJ need not discuss every piece of evidence in the record for his decision to stand." *Thacker v. Comm'r of Soc. Sec.*, 99 F. App'x 661, 665 (6th Cir. 2004); *see also Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 508 (6th Cir. 2006) ("[A]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party."). In short, Plaintiff's argument is simply a request that the Court reweigh the evidence, which it may not do when reviewing the ALJ's decision. *See Garner*, 745 F.2d at 387.

Because the ALJ's analysis of Ms. Bush and Mr. Mulder's opinion is supported by substantial evidence and complies with the applicable regulation, this claim of error lacks merit.

## II.     Plaintiff's Subjective Symptoms

An ALJ evaluates a claimant's statements concerning the intensity, persistence, and limiting effects of her symptoms of an alleged disability in accordance with SSR 16-3p. "While SSR 16-3p eliminated the use of the term 'credibility,' the regulatory analysis remains the same." *Karmol v. Comm'r of Soc. Sec.*, No. 1:17-cv-977, 2019 WL 1349485, at *3 (W.D. Mich. Mar. 26, 2019). An ALJ should consider the factors set forth in 20 C.F.R. § 404.1529(c)(3) but "is not required to discuss every factor or conduct a factor-by-factor analysis." *Pratt v. Comm'r of Soc. Sec.*, No. 1:12-cv-1084, 2014 WL 1577525, at *3 (W.D. Mich. Apr. 21, 2014) (collecting cases).

11

SSR 16-3p explains that an ALJ's decision must "contain specific reasons for the weight given to an individual's symptoms, be consistent with and supported by the evidence, and be clearly articulated so that the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms." 2017 WL 5180304, at *10.

Plaintiff contends that the ALJ failed to properly evaluate his subjective symptoms because his findings were predicated on a mischaracterization of Plaintiff's part-time work as strenuous. (ECF No. 9 at PageID.2170–71.) Plaintiff notes that he consistently stated that his work at the rent-to-own store was "minimal and part-time." (*Id.* at PageID.2170.) As discussed above, however, in noting that Plaintiff continued to work "part time at a strenuous job" (PageID.44), the ALJ was citing Plaintiff's own description of his "rather strenuous" job with the log cabin manufacturer that Plaintiff told Dr. Campbell that he was still performing as of September 8, 2022. (PageID.1189.) Plaintiff points to no evidence supporting that he was not performing this job as of the time of the hearing. Thus, the ALJ did not mischaracterize the record in evaluating Plaintiff's subjective symptoms.

Plaintiff also contends that the ALJ erred in assessing his subjective symptoms by not including manipulation limitations in his RFC finding. Plaintiff notes that the ALJ cited his hearing testimony that he had trouble grasping with his right hand and cites evidence showing that he had swelling in his hands and fingers at various medical visits in 2021 and 2022. (PageID.44, 908, 914, 1209.) While this evidence might suffice to support manipulative limitations, other evidence indicated that such limitations were not supported. For example, the ALJ cited Plaintiff's activities of hunting with a crossbow, kayaking, and ice fishing (PageID.44, 70, 371), all of which requires bilateral grasping. In addition, Plaintiff's former fiancée stated in her third-party function report that he could use a riding lawn mower, use a chop saw and screw gun for house repairs, and play

12

cards. (PageID.41–42, 369, 371.) Finally, in his Adult Function Reports submitted in 2020 and 2021, Plaintiff indicated that he did not have difficulty using his hands. (PageID.387, 413.) This evidence supports the ALJ's decision not to include manipulation or handling limitations in his RFC finding.

It is well established that a claimant has "the burden of proving h[is] lack of residual functional capacity." *Jordan v. Comm'r of Soc. Sec.*, 548 F.3d 417, 423 (6th Cir. 2008). As noted in *Zimmerman v. Commissioner of Social Security*, No. 1:18-cv-793, 2019 WL 2435762 (W.D. Mich. June 11, 2019), this burden "is much higher than identifying pieces of evidence on which the ALJ could have made a factual finding in his favor." *Id.* at *3. Instead, "[t]he Commissioner's decision cannot be overturned if substantial evidence, or even a preponderance of the evidence supports the claimant's position, so long as substantial evidence also supports the conclusion reached by the ALJ." *Id.* (citing *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 477 (6th Cir. 2003)). Plaintiff has not met this burden because the ALJ's decision is supported by substantial evidence. Plaintiff's reliance on other evidence that might have produced a different result is insufficient.

Accordingly, this claim of error lacks merit.

## CONCLUSION

For the foregoing reasons, I recommend that the Commissioner's decision be **affirmed**.

Dated: September 23, 2024                           /s/ Sally J. Berens
                                                    SALLY J. BERENS
                                                    U.S. Magistrate Judge

## NOTICE

OBJECTIONS to this report and recommendation must be filed with the Clerk of Court within 14 days of the date of service of this notice. 28 U.S.C. § 636(b)(1)(C). Failure to file

objections within that time waives the right to appeal the District Court's order. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).